WELLS, Chief Judge.
We affirm the final order entered below by the Unemployment Appeals Commission, now known as the Reemployment Assistance Appeals Commission, see 443.012, Fla. Stat. (2012),[1] disqualifying Raul A. Guillen from receiving unemployment compensation benefits based on a determination that he had voluntarily left his employment without good cause attributable to his employer. We do so because this determination is fully supported by the record and competent, substantial evidence. The testimony adduced below, while in part contested, was that Guillen was hired in October 2008 by Republic Services of Florida as a recycling truck driver. During most of his tenure at Republic, Guillen and a helper had been assigned to his truck. Shortly before Guil-len’s employment terminated, Republic changed its staffing, eliminating the helpers assigned to each truck and altering the route served by each truck. When Guillen was advised of these changes, he refused to drive his route and left the workplace. When he subsequently failed to appear to drive his scheduled route and failed to contact Republic, his employment was terminated.
Section 443.101(l)(a) of the Florida Statutes provides that an employee who voluntarily leaves his or her employment without good cause attributable to the employer is not eligible to receive unemployment benefits. § 443.101(l)(a), Fla. Stat. (2011). As used in this context, the term “good cause” means circumstances that would impel the average, able bodied, qualified worker to give up his employment. See Kloepper v. Unemployment Appeals Comm’n, 871 So.2d 997, 999 (Fla. 5th DCA 2004); Brown v. Unemployment Appeals Comm’n, 633 So.2d 36, 38 (Fla. 5th DCA 1994); Ritenour v. Unemployment Ap *209 peals Comm’n, 570 So.2d 1106, 1107 (Fla. 5th DCA 1990; see also Abascal v. South Dade Rehab Assoc. LP, 900 So.2d 721, 722 (Fla. 3d DCA 2005) (“[W]e agree with the Commission that Abascal’s decision to quit her job rather than face possible loss of accrued leave at some time in the future on as of yet unrealized circumstances does not come within [the good cause] exception. See, e.g., Home Fuel Oil Co., Inc. v. Florida Unemployment Appeals Comm’n, 494 So.2d 268, 270 (Fla. 2d DCA 1986) (rejecting the argument that an employer’s change in ownership provided claimant with good cause to quit, stating that the ‘statute protects employees of only those employers who wrongfully cause their employees to ‘voluntarily’ leave their employment’); Uniweld Prods., Inc. v. Indus. Relations Comm’n, 277 So.2d 827, 829 (Fla. 4th DCA 1978) (‘[t]o voluntarily leave employment for good cause, the cause must be one which would reasonably impel the average able-bodied qualified worker to give up his or her employment’); see also Frogge v. Davenport, 906 S.W.2d 920, 924 (Tenn.App.1995) (individual’s ‘voluntary decision to quit [which] was motivated only by speculation that he would lose his job and his accumulated benefits’ was not good cause to leave his employment).”); Margulies v. Pallott & Poppell, 599 So.2d 195, 196 (Fla. 3d DCA 1992) (holding that claimant’s leaving work for indefinite period to take care of her ailing mother was voluntary termination of employment without good cause which disentitled her to receipt of unemployment compensation benefits); Glenn v. Fla. Unemployment Appeals Comm’n, 516 So.2d 88, 89 (Fla. 3d DCA 1987) (“Whenever feasible, an individual is expected to expend reasonable efforts to preserve his employment.”).
There is no evidence in this case that Republic imposed working conditions so harsh or unreasonable on Guillen that he had no choice but to quit. To the contrary, the evidence was that on the day he was asked to run his route alone and walked off the job, his supervisor told him to try the new route and if it did not work out Republic would try something else. Rather than working with his employer, there was testimony that he “refused to run the route. He gave the route sheet back to us and said he wasn’t going to do it and pretty much basically walked out the building [and did not return].” On this record, the hearing referee correctly determined that Guillen had voluntarily left his job without good cause.
The order denying unemployment benefits to Guillen should, therefore, be summarily affirmed. We write, however, to address the argument raised and adjudicated for the first time by the dissent, that Republic did not properly invoke its right to appeal from the initial non-monetary determination that Guillen was eligible for benefits because Republic had failed to timely respond to an information request relating to a monetary determination. This argument is contradicted by the record.
Section 443.151(3) of the Florida Statutes governs eligibility for unemployment compensation and essentially divides eligibility into two distinct determinations: (1) monetary determinations governed by sub-paragraph (b), and (2) non-monetary determinations governed by subparagraph (c).

MONETARY ELIGIBILITY AND DETERMINATIONS

A. Notice to the Employer

Under section 443.151(3)(a) of the Florida Statutes, the Department of Economic Opportunity is required to notify employers that a claim for unemployment benefits has been made and to advise each employer that it must “respond” to that claim within 20 days or forfeit relief from a *210 determination as to the amount of any benefits which might be paid under 443.131(3)(a):
3. DETERMINATION OF ELIGIBILITY.—
(a) Notices of Claim. — The Department of Economic Opportunity shall promptly provide a notice of claim to the claimant’s most recent employing unit and all employers whose employment records are liable for benefits under the monetary determination. The employer must respond to the notice, or in lieu of mailing, within 20 days after the delivery of the notice. If a contributing employer fails to timely respond to the notice of claim, the employer’s account may not be relieved of benefit charges as provided in s. 443.131(3)(a), notwithstanding paragraph (5)(b).
443.151(3)(a), Fla. Stat. (2012).
To comply with this requirement, the Department has adopted rule 60BB-3.016 (2) titled “Notices to Employers” which provides that the Department “will use AWI Form UCB^412, ‘Determination of Unemployment Compensation claim Filed’ ... to notify the claimant’s most recent employing unit and each employer ... of each claim for benefits filed, pursuant to Section 443.151(3)(a).” Fla. Admin. Code R. 60BB-3.016 (2)(a).
On July 28, 2011, the Department provided Republic with a form UCB^12 regarding Guillen’s claim as required by section 433.151(3)(a) and rule 60BB-3.016(2)(a).[2] This form put Republic on notice that a claim for unemployment benefits had been made against it:
The claimant whose name appears on this notice has filed a claim for Unemployment Compensation benefits. This notice is being mailed to you either because state records indicate you paid the individual wages during the base period of the claim or the individual has reported that he or she worked for you since the end of the base period and you are therefore, entitled to notice of the claim.
It also made a first request for information regarding the types and amounts of wages paid to Guillen and asked Republic to indicate by checking the appropriate box whether Guillen (1) was laid off due to lack of work; (2) was discharged, and if so because of (a) inability to perform, (b) misconduct, or (c) unsatisfactory job performance during a probationary period; (3) had voluntarily quit; (4) was suspended; (5) was on leave of absence; (6) refused an offer of work; or (7) was employed by an educational institution. The UCB^412 further warned:

If you are a contributing base period employer the Department cannot consider your account eligible for relief ñ'om benefit charges (noncharging) for payments on this claim unless you respond to this notice within 20 calendar days from the date mailed to employer as printed on the reverse side of th is form.

All base period employers should be aware that if the claimant is found to have received benefits in error because you did not respond within 20 calendar days to this claims notice your account cannot be credited for amounts determined overpaid.
As required by section 443.151(3) (a), Republic responded to this request for in *211 formation within 20 days stating in two letters sent on the same day:
This is in response to form UCB 412, Determination Notice of Unemployment Compensation Claim Filed, dated July 28, 2011.... In view of the following we request relief of benefit charges and/or a determination on the claimant’s eligibility-
[[Image here]]
[Letter one] The claimant was discharged for insubordination.
[Letter two] The claimant was discharged for insubordination. On T — [23]— 2011, The claimant refused to work assignment [sic], walked off the job, and never returned!.]
By virtue of these responses, Republic satisfied all of the requirements imposed on it by section 443.151(3)(a) and the Florida Administrative Code rules to challenge Guillen’s monetary eligibility for unemployment compensation from Republic.

B. Notice to the Employee

While section 443.151(3)(a) obligates the Department to provide notice to an employer, section 443.151(3)(b), obligates the Department to provide notice to claimants of the amount of any “initial monetary determination”:
(b) Monetary determinations. — In addition to the notice of claim, the department shall also promptly provide an initial monetary determination to the claimant and each base period employer whose account is subject to beiny charyed
[[Image here]]
§ 443.151(3)(b), Fla. Stat. (2012) (emphasis added).
To comply with this requirement, the Department adopted Rule 60BB-3.016(3) titled “Notice to Claimants” and obligated the Department to send each claimant a form UCB-11 advising of monetary eligibility under section 433.151(3)(a):
The Agency for Workforce Innovation will issue a determination of monetary eligibility to each claimant on AWI for UCB-11, “Wage Transcript Determination,” ... which will serve as notice to the claimant pursuant to Section 443.151(3)(a), F.S.
Fla. Admin Code R. 60BB-3.016(3).
The day before Republic was notified of Guillen’s claim and asked for information regarding his eligibility, the Department sent Guillen a UCB-11 advising him of its initial determination of monetary eligibility. It does not appear from the record before us that a copy of that notice was sent to Republic. At the top of the UCB-11, Guillen was warned that the initial monetary benefits being awarded were subject to termination if he quit his job:
THIS DETERMINATION TELLS YOU IF YOU HAVE ENOUGH WAGES TO ESTABLISH A CLAIM FOR BENEFITS; HOWEVER, BENEFITS MAY BE DENIED IF YOU QUIT, WERE FIRED OR ARE NOT ABLE TO WORK OR ACCEPT A JOB. IF THERE ARE ISSUES, YOU WILL BE CONTACTED TO PROVIDE MORE INFORMATION.
(Some emphasis added).
This notice also informed Guillen that if “you wish to request monetary reconsideration, you must do so within 20 days.” It further advised that if Guillen had, he had the right to seek monetary “reconsideration” or to appeal within 20 days:
* * * * MONETARY RECONSIDERATION * * * *
If you wish to request monetary reconsideration, you must do so within 20 days.
*212 * * * * APPEAL RIGHTS * * * *
This determination will be final unless a request for reconsideration or an appeal is filed within 20 calendar days after the mailing date of this determination.
Guillen sought neither reconsideration nor an appeal from this monetary determination.

NON-MONETARY ELIGIBILITY AND DETERMINATIONS

Thereafter, on August 19, 2011, only two days after Republic sent its timely responses to the UCB-412 stating its objections to payment of monetary benefits, the Department — apparently without the benefit of Republic’s objections — issued an “OFFICIAL UCB-45 ... ’ NOTICE OF DETERMINATION.” That notice, adopted by the Department in rule 60BB-3.017, titled “Nonmonetary Determinations,” stated that based on available information and the fact that the employer had failed to respond to its request for separation information (this request made in the UCB-412, the only request made of the employer), Guillen was entitled to benefits because his discharge was for a reason other than misconduct connected with his work:
SECTION I. NOTICE OF DETERMINATION
BASED ON AVAILABLE INFORMATION IT IS DETERMINED THAT THE CLAIMANT WAS DISCHARGED FOR REASONS OTHER THAN MISCONDUCT CONNECTED WITH THE WORK. THE EMPLOYER OR THE EMPLOYER’S REPRESENTATIVE FAILED TO RESPOND TO THE AGENCY’S REQUEST FOR SEPARATION INFORMATION.
SECTION II. DETERMINATION IN ACCORDANCE WITH SECTION 443, FLORIDA STATUTES: BENEFITS ARE PAYABLE BECAUSE: THE DISCHARGE WAS FOR REASON OTHER THAN MISCONDUCT CONNECTED WITH THE WORK.
This notice also stated that the determination made therein would become final “UNLESS AN APPEAL IS FILED WITHIN 20 CALENDAR DAYS AFTER THE MAILING DATE SHOWN ABOVE.” No mention was made of the availability of a redetermination as provided in section 433.151(3)(e) of the Florida Statutes.
Within five days of this notification, Republic sent a letter to the Department expressly referencing the “UCB-45, Notice of Determination, dated August 19, 2011.” In that letter, Republic advised the Department that it had responded to its request for information and attached the letters in response to the UCB-412. It also reoffered the information provided in responses to the UCB-412 made only two days before the UCB-45 determination was issued:
This is in reference to form UCB-45, Notice of Determination, dated August 19, 2011. We respectfully request a re-determination based on the following information.
We request non-charge and offer this information in regards to the UCB 412. The claimant was discharged for insubordination. Please see attached responses provided on 8-17-11.
While this letter does state that Republic is seeking a redetermination based on the information that was timely provided and should have been considered by the Department when the non-monetary eligibility determination was made, its reference to the UCB^5, which authorized only an appeal makes it clear that this pro se litigant was seeking to invoke the appellate rights extended ■ to it by the *213 UCB-45 to which it was responding. By sending this letter, Republic sought to introduce no new evidence so as to trigger a redetermination under section 443.151(3)(e). Rather, Republic sought review of the erroneous determination that it had not timely responded and that based on that timely response, Guillen was disqualified from receiving benefits.
As Rule 60BB-5.002 governing appeals in unemployment compensation cases confirms, “[a]ny person entitled by law to notice of a determination or redetermination issued pursuant to Section 443.151(3), F.S., whose substantial interest is adversely affected thereby may file an appeal from that determination or redetermination.” In the same vein, Rule 60BB-5.003 provides that “[a]ny legible written notice filed in accordance with these rules which expresses disagreement with ... a determination ... shall constitute an appeal.” Fla. Admin. Code R. 60BB-5.003.
In sum, the employer timely responded within twenty days of receiving the notice of a claim for unemployment compensation, the Florida Administrative Code supported the decision to treat this matter as an appeal, and competent, substantial evidence in the record confirmed the appeals referee’s finding, adopted by the Commission, that the employee did not quit for “good cause.”
Accordingly, the order on appeal is affirmed.
LAGOA. J., concurs.

. Effective July 1, 2012, section 443.012 provides:
(1) There is created within the Division of Workforce Services of the Department of Economic Opportunity a Reemployment Assistance Appeals Commission.

. While that form is not in the record before us, Republic’s two timely responses which reference the UCB-412 it received are in the record. Those responses confirm that Republic was notified by virtue of a "UCB 412, Determination Notice of Unemployment Compensation Claim Filed, dated July 28, 2011.”