934 So.2d 570 (2006)
HOWELL & O'NEAL, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Shana R. David, Appellees.
No. 1D06-0028.
District Court of Appeal of Florida, First District.
July 11, 2006.
*571 Charles Cook Howell, III of Howell & O'Neal, P.A., Jacksonville, for Appellant.
Geri Atkinson-Hazelton, General Counsel, and John Maher, Deputy General Counsel, Tallahassee for Appellee Florida Unemployment Appeals Commission; Scott A. Tacktill, Orlando for Appellee Shana R. David.
LEWIS, J.
The employer, Howell & O'Neal, seeks review of an order of the Unemployment *572 Appeals Commission ("Commission"), in which it rejected several of the appeals referee's factual findings on the ground that they were not supported by the record and determined that claimant, Shana R. David, left her employment for good cause attributable to the employer and, thus, that she was eligible to receive unemployment compensation benefits. The employer argues that the Commission erred in rejecting the appeals referee's factual findings because they are supported by competent, substantial evidence. Because we agree, we reverse and remand for further proceedings.
After the Agency for Workforce Innovation ("Agency") determined that claimant was entitled to benefits because she quit her job with good cause attributable to the employer, the employer appealed that determination. At a telephonic hearing before an appeals referee, Charles C. Howell, III, the employer's president, testified that claimant was originally hired to work as a runner for twenty-four hours per week but later asked the employer if she could work more hours. Howell continued:
And we said we would certainly try to do so. We thought she was a very good employee and still do. We said, "We will give you two more hours a weeka day, for ten hours a week, during which time you would be helping our nurse paralegal and billing for those hours."
And we tried that and after five months it turned out that there was simply not enough work to keep her busy helping our paralegal and we had advised [claimant] that we would have to put her back to the twenty-four hour a week position that she was originally hired for.
And at that point in time, that was not acceptable to her, so she left.
When asked whether claimant was told that the employer would try to give her thirty-four hours a week for a period of time when her hours were initially increased, Howell replied, "We told her that we would try to give her more hours a week if the work justified it and initially it did." When asked whether claimant was told that the change to thirty-four hours per week would be "forever" or whether the employer was just "going to try it," Howell responded, "It was as long as the work was there we certainly would let her have the time because she did good work. We could bill for it." Howell could not recall whether he or his wife, the employer's office administrator, had advised claimant that she was no longer needed to work thirty-four hours per week.
Claimant testified that after increasing her weekly hours, the employer told her that it no longer needed her as an assistant paralegal but offered to rehire her for her original position as a runner. She left her employment because she needed full-time work and the healthcare benefits that the thirty-four-hour-a-week position provided. The following exchange then took place between the appeals referee and claimant:
Q And did you go to them and ask for more hours after you'd been working for a while?
A I went to them and I asked specifically for a full-time position, yes.
Q Did they tell you that they would hire you full-time on a trial basis to see if you were needed?
A They didn't say a trial basis, no.
Q Did they say that they would see if they needed you for that period, for the additional hours?
A No. They didn't say that they would see if I was needed.
Q So no one ever told you that they would hire you full-time on a trial *573 basis to see if you were needed ten more hours a week?
A No.
* * *
Q And were you advised that your benefitsthat you would no longer have benefits if you worked twenty-four hours?
A Yes.
* * *
Q And it's your testimony that you were never advised that they would see if you were needed for the additional time?
A No.
The appeals referee found that although claimant may have made a valid personal decision to quit, she had not shown that she quit with good cause attributable to the employer. Thus, the referee determined that claimant was disqualified from receiving benefits. The referee noted that she had been presented with conflicting testimony regarding whether the employer guaranteed claimant full-time work when she requested additional hours or whether claimant was advised that the employer would "try to see if she would be needed for the additional hours" and accepted the employer's testimony as more credible than that of claimant. The referee ultimately reversed the Agency's determination that claimant was entitled to benefits.
Claimant appealed the referee's decision to the Commission, arguing that it was not supported by competent, substantial evidence, that she left work for good cause attributable to the employer, and that the employer reduced her hours and benefits, which caused a substantial and detrimental change in the conditions of her employment. The Commission vacated the referee's decision and remanded the case to the referee with directions that she make specific findings of fact addressing the evidence regarding the changes in claimant's terms of employment and that she state with particularity in her conclusions of law whether those changes gave claimant good cause to leave her employment.
On remand from the Commission's order, the appeals referee issued a second decision containing the following findings of fact:
[Claimant] worked for the employer from July 12, 2004 until March 25, 2005, as a runner and as an assistant to the nurse paralegal. [Claimant] was hired to work 24 hours each week. [Claimant], in September 2004, requested to work 10 additional hours. The employer agreed to allow her to work 10 hours more each week, as long as there was sufficient work and need. [Claimant] began working 34 hours per week on September 28, 2004. In March 2005, the nurse paralegal advised the employer that she did not have enough work to keep [claimant] busy. The employer advised [claimant] on March 11, 2005, that there was insufficient work to justify the additional hours and advised [claimant] that her hours would return to the original agreement of hire which was 24 hours each week. [Claimant] quit.
In her conclusions of law, the referee set forth in part:
The record reflects that [claimant] quit when the employer advised her that her hours would return to the original agreement of hire after the hours were increased on a temporary basis. The record reveals that the employer advised [claimant] that they would try the additional hours each week as long as there was sufficient need. Although [claimant] may have made a valid personal decision to quit, she has not shown that her quitting was with good cause attributable to the employer or for her illness or disability or due to the employer *574 changing the agreement of hire on a permanent basis. Therefore, [claimant] is disqualified for receipt of unemployment benefits based on her separation from the employer.
Like she did in her first decision, the referee noted that she was presented with conflicting testimony regarding whether the employer guaranteed claimant full-time work when she requested the change in hours or whether claimant was advised that the employer would see if there was a need for her to work the additional hours and accepted the testimony of the employer as more credible than that of claimant. The referee again reversed the Agency's determination that claimant was entitled to benefits.
Claimant sought the Commission's review of the referee's second decision, again asserting that it was not supported by competent, substantial evidence, that she left work for good cause attributable to the employer, and that the employer reduced her hours and benefits, thereby causing a substantial and detrimental change in the conditions of her employment. She further asserted that the referee's second decision did not materially differ from her first and did not adequately address the evidence regarding the changes in the terms of claimant's employment.
The Commission subsequently entered the order at issue in this appeal, in which it noted that the referee's finding that the employer agreed to allow claimant to work an additional ten hours per week as long as there was sufficient need included an implicit finding that the employer and claimant had agreed that claimant would work the additional hours only as long as a need existed. The Commission found that the record did not reflect that the employer communicated to claimant that the additional hours were contingent upon the employer having sufficient need, that claimant's testimony that she agreed to an increase in her hours that was not temporary was not effectively rebutted at the hearing, and that Howell's testimony regarding his conversations on the subject was vague and ambiguous. The order states that Howell could not recall whether he spoke to claimant regarding the additional hours, whether his wife spoke to her about them, or whether they spoke to her together and that although Howell testified regarding his understanding that the additional hours would be temporary and contingent on the workload, he did not testify that he told claimant or heard her being told that the "enhancement to her terms of employment" would be temporary. Accordingly, the Commission found that the parties did not agree that the additional hours would be temporary and rejected the referee's findings to the extent that they reflected such an agreement. The Commission further found that the "temporary nature of the upgrade" did not become part of claimant's new terms of employment when her hours were increased, that claimant worked under the new terms for more than two-thirds of the time she worked for the employer, and that at the end of that time, the employer determined that its business needs no longer justified claimant's new work schedule. The order further states:
When reverted to her initial terms of hire, [claimant] effectively was demoted from the status of a full-time employee with benefits to part-time status, meaning she lost her benefits as well as more than one-quarter of her pay. The demotion was effected based on the employer's business needs and not on any misconduct on the claimant's part. Accordingly, the demotion gave [claimant] good cause attributable to the employer to leave this employment; therefore, she is not disqualified from receipt of benefits.
*575 The Commission reversed the referee's decision, found that claimant was entitled to benefits if otherwise eligible, and ordered that the employer's record be charged with its proportionate share of benefits paid in connection with claimant's claim. This appeal followed.
A claimant who voluntarily leaves his or her employment is disqualified from receiving unemployment compensation benefits unless he or she leaves due to "good cause" that is attributable to the employer or that consists of illness or disability requiring separation from work. § 443.101(1)(a), Fla. Stat. (2005). "Good cause" in this context is "one which would reasonably impel the average able-bodied qualified worker to give up his or her employment." Moore v. Fla. Unemployment Appeals Comm'n, 498 So.2d 992, 993 (Fla. 1st DCA 1986); see also Manning v. State Unemployment Appeals Comm'n, 787 So.2d 954, 955 (Fla. 4th DCA 2001). The Commission's standard of review of an appeals referee's decision is whether the referee's findings of fact are based on competent, substantial record evidence and whether the proceedings on which those findings are based complied with the essential requirements of law. Szniatkiewicz v. Unemployment Appeals Comm'n, 864 So.2d 498, 501-02 (Fla. 4th DCA 2004). The appeals referee, as the trier of fact, is privileged to weigh and reject conflicting evidence, and the Commission cannot reweigh the evidence and substitute its findings for those of the referee. Id. at 502. Although the Commission may reject the referee's conclusions of law without limitation, it may not modify the facts to reach a different legal conclusion, rely on facts that were not established at the hearing, or rely on a theory not advanced by one party or anticipated by the other. See id. This Court cannot make credibility determinations or substitute its judgment for that of the referee and must uphold the appeals referee's decision where there is competent, substantial evidence to support it. See id.; Ford v. Se. Atl. Corp., 588 So.2d 1039, 1040 (Fla. 1st DCA 1991). This Court may overturn a legal conclusion of the Commission if it is clearly erroneous and, in reviewing the Commission's substituted conclusion, must assure that the correct rules of law were applied. See id.
Here, the Commission rejected the appeals referee's factual findings that the employer advised claimant that the additional weekly hours were contingent upon the employer having sufficient need and that claimant and the employer agreed that the additional hours would be temporary and/or contingent on the workload on the ground that such findings were not supported by the record. However, when asked whether claimant was told that the employer would give her thirty-four hours per week for any specific period of time, Howell testified that claimant was told that the employer "would try to give her more hours a week if the work justified it." When asked whether claimant was told that the increase in hours would be permanent or whether the employer was just going to try it, Howell testified that the increased hours were to last as long as the work was there. Although the Commission's order describes Howell's testimony as "vague and ambiguous" and states that he could not remember whether he spoke to claimant regarding the additional hours, whether his wife spoke to claimant about them, or whether they both spoke to claimant together, Howell only testified that he did not remember whether he or his wife had informed claimant that she was no longer needed to work thirty-four hours per week. No testimony was elicited regarding who initially spoke to claimant about increasing her hours. As she was entitled to do, the referee accepted Howell's testimony as true and rejected *576 claimant's contradictory testimony. See Szniatkiewicz, 864 So.2d at 502. Because competent, substantial evidence supports the appeals referee's findings that claimant was advised and/or agreed that the increase in her hours was contingent upon the employer having sufficient need for the additional work, the Commission erred in rejecting such findings. See id.
Because the Commission improperly rejected the referee's factual findings regarding the circumstances surrounding the initial increase in claimant's hours before reaching its ultimate determination that claimant was eligible for benefits, it is unclear from the order whether the Commission would have reached the same conclusion if it had properly accepted the referee's factual findings. Accordingly, the order on appeal is REVERSED and the cause is REMANDED to the Commission to address the propriety of the referee's determination that claimant is ineligible for benefits under the facts as found by the appeals referee.
BARFIELD and VAN NORTWICK, JJ., concur.